Good morning, your honors. May it please the court, Cori Ando on behalf of Stacy Stith. Mr. Stith was convicted at a trial and sentenced to 24 years in prison following a jury trial in which the district court first allowed the government to impeach Mr. Stith with prior not guilty pleas, and second allowed the government to introduce hearsay testimony that falsely gutted Mr. Stith's defense. Each error was blatant, each was serious, each was made in a case that turned on a confidential informant who had violated the terms of his contract by engaging in unauthorized contact with Mr. Stith and engaging in unauthorized drug deals. Each error went directly to the sole question at trial, whether Mr. Stith was entrapped by the confidential informant, and each error requires reversal. Unless the court has questions about the impropriety of the impeachment, I'd like to turn directly to the prejudice that was caused by that. The government cannot prove beyond a reasonable doubt that Mr. Stith was not prejudiced when the question of entrapment, as I mentioned, was the only question at trial and turned directly on Mr. Stith's credibility. The government attempts to overcome its burden by pointing out Mr. Stith's extensive criminal history, which he did not deny, but that argument ignores that reform is possible and ignores cases like Sherman v. United States Supreme Court case, in which the court explicitly recognized that people who have been convicted of prior drug trafficking offenses can still be entrapped as a matter of law. Well, you look at the transcripts from the conversations. I think you need to deal with the fact that from those transcripts, it didn't appear that Mr. Stith's arm was being twisted. Well, I think the important thing is what happened in the conversations that were not recorded. What happened before the – I think the first conversations that are recorded are on June 29th. And Mr. Stith's position was that Mr. Gertman had been contacting him regularly, beginning several months prior, and pressuring him. And it was during those months that he was entrapped into committing the offenses. And so precisely what his behavior was on the recorded conversations doesn't answer the question of whether Mr. Gertman entrapped him. And as this Court's case law makes perfectly clear, once a person is entrapped, he remains entrapped. And even if he then voluntarily engages in the behavior, he is no less entitled to the defense. Not simply voluntarily, but rather enthusiastically, it would appear, without the confidential informant being part of some of those conversations. I'm not sure which conversations you're referring to. I couldn't separate them out by date, so I don't know that I could indicate them to you. But we do have a series of recorded conversations, and in those conversations there are no signs of entrapment. Now, you can probably take the position that, well, the entrapment happened some time ago, but at what point does a defendant become something other than a volunteer or enthusiastic participant because of a conversation that had taken place some time before? Well, the case law makes clear that once you're entrapped, you remain entrapped as a matter of law. And I can provide citations for those, for that authority. But whether... What do you do with this strange story about, well, it was really his drugs, but he gave them to me because I was supposed to sell them back, so that he could show other buyers that he was having to pay more, and that way he could charge them more. But then my sale back to them had to take place in private where the other buyers couldn't see it. That doesn't seem to... It doesn't immediately read like a good detective story. Mr. Stiff is clearly a damaged individual. He has been addicted to crack for over 20 years. He's been incarcerated for the majority of his adult life. But his story is not always the clearest. His story what? His story is not always the clearest in his explanation for how things unfolded. You know, he obviously is confused about dates. He provides very literal answers to some of the questions, but he also provides a lot of answers that do make sense and that consistently state that... Yeah, but doesn't it seriously undermine his credibility when he pitches a big part of his story on, well, here's how he entrapped me and here's what was going on, and it doesn't make any sense? And the jury couldn't... Can't it undermine his credibility in the sense of all the rest of what allegedly was going on? Well, the jury was instructed that it could believe parts of what he said but didn't have to believe all of what he said and still credit those parts. Of course. Right. That's true. And I don't believe that the government can overcome its burden of proving that the error was harmless in light of his consistent statements that Mr. Gertman had been contacting him, that he'd been trying to stay clean, that he was motivated because of his relationship with his daughter. Is it your position that if we view the evidence in light most favorable to the government, you still must prevail in this appeal? Because this is a constitutional error, I'm not sure why the court would... I'm talking about the entrapment defense. My position is not that he was entrapped as a matter of law, but rather that the government's improper impeachment of Mr. Skiff is reversible error in that they cannot overcome the burden of proving that it was harmless in this case. I guess the question that I'm still focused on is suggested by Judge Fernandez's question. At one point in your brief you say that the key for the case, I'm flipping through and I've got it in my notes but I can't find it in the brief, but it seems to me at some point you say that the case turned on the credibility, the believability of the defendant. And it struck me that the defendant had told a story which on its face seemed implausible. And maybe impossible to defend. Or the question I guess I'm putting to you is, is it possible to defend his story which was convoluted at best in the face of recorded conversations? I think as we sit here and we pick apart what his testimony was, it's easy to say, well, this part was inconsistent or this part did not make sense. But Mr. Skiff himself acknowledges that he was confused about the dates.  I mean, I guess the short answer to your question is, yes, we can defend his explanation. But I'm not sure that we need to. The jury could have believed it. They did not have to believe the entire explanation. They could have thought that perhaps he was now trying to mitigate his role in the offense, even though he had been entrapped. But this is a man who is clearly wary of the system. And whether he always was perfectly coherent in his explanation does not answer the question of whether or not the government can prove that it was harmless. Well, but if you're correct, I mean, what you're really saying is once, in almost any case, once this error is made, government can't prove harmless error. It's the end of it. Because it doesn't matter what kind of cockamamie story the defendant says or all the other things that undermine his credibility. Just because you said this, we can always come back and say, yes, but you didn't know that there were other things. And therefore, it's always going to be impossible to prove it harmless beyond a reasonable doubt. That sounds like where your argument takes you. Well, I hope that's not the case. You don't want to say it, I know. No, I certainly would not say it. And I would point the court to the record and where Mr. Stiff does make the entrapment. He does say that he was entrapped by, or he doesn't put it that way, but he says that Mr. Gertman was contacting him. That's why he became involved. Of course he says that. And once he says that, it's all over. Well, at that point, he's entitled to have the jury. It's all over because it's impossible to prove harmless beyond a reasonable doubt because once he says it, that's the end of the case. You've got to reverse. That sounds like your position. Because when people say, well, how about this and how about that and how about the other and how about something else, none of that matters because he said, I was entrapped, the end. Isn't that your position? Once he has presented that defense, he is entitled to have the jury make the finding in the context of a fair trial. I understand that argument. What I'm saying is, am I correct? Your bottom line comes out to be once he says, I was entrapped, and he gets on the stand and says, I was entrapped, the end. The heir can't be harmless beyond a reasonable doubt because the jury could always believe, I was entrapped. That's what you seem to be saying. That is certainly not what I intend my message to be. Well, what is your message then? Everything else goes against him, let's say. Everything else is on the other side. And he says, I was entrapped. I don't think everything else in this case goes against him, I think, is the reason why I'm not agreeing that it goes that far. I see I have 30 seconds remaining. If I can, I'd like to respond. Please answer the question. We'll still give you a rebuttal. Okay. Thank you, Your Honor. There are situations in which a defendant's entrapment defense would be so weak or so unbelievable that I can see where a court could find that the government had met its burden. But I also believe that the error is so egregious in this case and the prejudice is so significant given Judge Robart's ruling that it goes to his credibility that the government can't meet that burden here. I understand. Thank you for your indulgence. Good morning. May it please the Court, my name is Tom Woods and I represent the United States in this matter. Judge Robart did not err in allowing the government to establish that on two occasions Mr. Stiff had gone to trial as opposed to pleading guilty. And if there were error, the evidence in this case was so overwhelming, any error was harmless. What was the authority that was relied upon by the district court in upholding that? I think the authority was the context in which the testimony came in throughout the course of the trial. I'm talking about legal authority. Your Honor, Judge Robart did not cite any legal authority, but I think that if we look at how the testimony proceeded, we can see why the testimony was properly admitted. So let's put the questioning in context. We have the, during the government's case in chief, the government presented evidence that on five prior occasions Mr. Stiff was involved in drug activity that resulted in convictions. Now when the defendant took the stand, he said he admitted the conduct that was at issue in the case, not simply that he was found guilty, but in fact that he admitted, in other words, accepted responsibility for this conduct. Now at that point in the trial, the government was concerned that the jury was laboring under a misimpression as to when, when the defendant had accepted responsibility. Because that was not brought out during the defendant's testimony. And the jury very well was under the misimpression that all along, from the moment that this conduct happened, the defendant had accepted responsibility. But in fact, that acceptance was of recent vintage, this trial. And that was the point that the government was trying to establish. And the government did that with only a few narrow set of questions. And just as importantly, this evidence was already in the record. Because the judgments for these convictions had been admitted previously during the government's case in chief without any objection from the defense. And on the judgments, it says that the judgments resulted from a jury trial. But your argument seems to be that the evidence was relevant, because it tended to prove something. That doesn't face up to the question as to whether you've got a constitutional right to require the government to prove its case, and whether the government's allowed to elicit the fact that you exercised your constitutional right as part of its cross-examination. In your honor, it's simply the defendant, in other words, put this issue, this narrow issue as to when he accepted responsibility. So in other words, did he do it? This is what I'm saying. You're suggesting that the evidence was relevant. I concede that the evidence was surely relevant on some level. On a broader level, it goes to the credibility of the defendant broadly, which, as the defense itself argues, was at the core of the case. What I'm suggesting is the fact that evidence is relevant does not necessarily mean that it's admissible, because there's some constitutional protections that we enforce nonetheless. All sorts of relevant evidence gets suppressed. Why is the elicitation of this line of cross-examination not a violation of his constitutional right to require the government to prove its case in those other cases? Because when the defendant took the stand and when he said, I admit the conduct that was at issue, the five witnesses who came in and says, I admit that this is what happened, he puts the question of when he admitted at issue. Why? Go ahead. Why? Why does he put that at issue? Because it's potentially, I mean, let me give you, let's use an example that would be, I think, even more extreme. Let's say he had said on the stand, I admitted it from day one. But he didn't say that. True. True. But the fact is the jury very well was under the omission of that testimony. The fact that that testimony was not developed one way or the other, the concern was that the jury would be under the misimpression, or at least at a minimum confusion and uncertainty as to when he admitted the conduct. And that's why the testimony was properly admitted. And, Your Honor, if I can contrast this case with something like Norris, the case that's relied on by the defense under the Fifth Circuit. So in Norris, we have a very different situation. And that's your classic case where there is error in this type of questioning. In that case, the prosecutor tried to establish that the fact that the defendant had pled not guilty in the prior case but was subsequently found and convicted showed that the original not guilty plea was a lie. And that's not only improper, it's incorrect, because the defendant always has the right to put the government to its burden of proof. But that's not what happened here. The government was not trying to establish that the defendant did something wrong, that he lied, that there was anything improper about the fact that he pled not guilty in the original cases. Simply trying to put into context when he accepted responsibility. Now, Your Honor, even if there were error, in this case the evidence really was overwhelming. The defendant's story was that his sole defense was entrapment. And his story was that the confidential informant had a plan with him to essentially defraud a third-party drug buyer. And the scheme, I guess, worked like this, according to the defendant, that the confidential informant would give him drugs and that the defendant would pretend to sell the drugs back to him at some inflated price. And therefore, he would be able to transfer or pass along, if you will, the inflated price to this other buyer. Well, the problem was the evidence simply was inconsistent with this story. On its face, the story didn't make sense. I mean, there's several problems. It's hard to know where to begin. But for one, the fact is that why was it that all these transactions happened in public? Because the defendant testified that, for example, on the August 8th transaction, he didn't expect this third-party buyer to be at the transaction. He also said that he had told the confidential informant that he was uncomfortable, that he didn't want to be in contact with people he didn't know. In other words, the third-party buyer. So why would you have the transactions all occur in public, where they can be under surveillance, which, in fact, they were? It just doesn't make any sense. Second, why is it that the defendant shows up on August 8th with substantially more drugs than the confidential informant had ordered? How is that consistent with this plan that the confidential informant's going to be giving the drugs to the defendant and the defendant's going to be just selling them right back? He shows up with nearly double the amount of crack and substantially more powder cocaine. Simply inconsistent. And also drugs were in different parts of the car, drugs in the gas cap and other parts of the car. The events of June 19th, the first call that's part of this case, where the plan was that the confidential informant telephoned the defendant to show up with an ounce of cocaine. And the defendant didn't show up, and his explanation was, well, I stopped for a drink, you were only ordering an ounce. Again, that's inconsistent with the story. June 29th, the fact that the confidential informant tries to purchase a certain amount of powder cocaine and the defendant says, I don't have my scale, I can't break that up, and they make some other arrangement. It's just inconsistent with the story. And there are others as well. Your Honor, if I may throw other questions on that issue, I'd like to turn to the second issue that's in this case. And again, this testimony needs to be put into context. So in the government's rebuttal case, the government called the defendant's probation officer. And really the purpose of this testimony was twofold. First was to establish the fact that the defendant had been referred for drug treatment in October, but in fact had not started treatment until all the way to February, which directly contradicted the defendant's testimony that he had been in treatment throughout the fall of 2006. And second, the testimony was relevant to establish that this was not some sort of voluntary treatment. In fact, it was a way for the defendant to stay out of jail. And that was the main purpose of this rebuttal testimony. Now, towards the end of the rebuttal testimony, there was talk about the fact that the defendant had not been in compliance with his drug treatment. And that seems to be the focus of the defendant's appeal. But the key point here is Judge Robart only admitted that testimony not for its truth. And so therefore, it was not improperly admitted hearsay testimony because it was only admissible as to the probation officer's understanding. What difference did that make? Well, I think it makes a big difference because all it was admitted for was this narrow point. Why would the narrow point you're saying was admitted for? How could that possibly be relevant or meaningful for the jury? The jury doesn't care what the probation officer thinks or shouldn't. Your Honor, I think on two points it's relevant. First, it finishes out the story as to when the defendant started his drug treatment program. So we've already had the fact that the defendant has talked to the probation officer. That was the basis for the prior part of his testimony and party admission as to when he is starting his treatment program. And that simply finishes off his testimony about the fact of when he is starting. But second, it also establishes that just because the defendant had started his drug treatment program doesn't necessarily mean that, in fact, he was completing all the necessary steps of his drug treatment program. And that testimony that's plainly hearsay doesn't get justified just because it relates to the same story that might have been non-hearsay testimony. I mean, I'm not sure. I don't understand any justification whatsoever for the admission of this testimony. Your Honor, I see I'm out of time. I answered that question. Thank you. Thank you. I think the basis was the defendant had testified that if there was any problems with his compliance, that his probation officer would be notified of that. And so that, of course, raised the specter that if the probation officer had been notified, perhaps some action would or would not be taken. So the fact that the probation officer didn't take any action, he was allowed to testify, that the fact doesn't necessarily mean he was, in fact, in compliance. It may have been, he may not have been. His understanding was he was not, but it was only admitted for that very narrow purpose. Thank you, Your Honor. Thank you. I'll give you a minute. Thank you, Your Honor. I think what's important in looking at the prejudice of the improper impeachment is the fact that Mr. Gertman and Mr. Stiff did provide explanations for a lot of the recorded conversations. And so when we try to dissect the recorded conversations, it might not wholly support or itself support the entrapment defense, but that's not the question. The question is what happened in those unauthorized and unrecorded conversations between Mr. Gertman and Mr. Stiff. But Mr. Stiff also did provide explanations for a lot of the inconsistencies or what I think what the government deemed inconsistencies in his story. But the jury didn't ever have to assess the believability of that story because the jury never had to believe Mr. Stiff. The improper impeachment left the jury with the impression that Mr. Stiff was a liar and that he shouldn't be believed. And that error was compounded by the second error made at trial, which was the improper admission of the hearsay testimony. That testimony suggested that not only did Mr. Stiff not have this life-changing rehabilitation experience that would have made him not predisposed, but also that Mr. Stiff not only lied to his probation officer, but was lying to the jury in his explanation that he was recovering from his addiction. Thank you, Your Honor. Thank you. We thank both counsel for the well-presented arguments. The case just argued is submitted.
judges: Alarcon, Fernandez, Clifton